UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-61329-CIV-ALTONAGA/Brown

**ROLLS-ROYCE COMMERCIAL**
**MARINE, INC.**, *et al.*,

    Plaintiffs,
vs.

**NEW HAMPSHIRE INSURANCE**
**CO./AIG EUROPE (UK) LTD.**, *et al.*,

    Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court on Defendants, Royal & Sun Alliance Insurance plc; Zurich Insurance plc; Aviva Insurance Limited; XL Insurance Company Limited; and Aviva International Insurance Limited's (collectively, the "Primary Insurers[']") Motion to Dismiss on the Grounds of Forum Non Conveniens and International Abstention (the "Primary Motion") [ECF No. 96]; and Defendants, Ace European Group Ltd; Chartis Insurance (UK), Ltd.; CNA Insurance Company Ltd.; Chubb Insurance Company of Europe, S.A.; Portman Insurance, Ltd.; Swiss Re Europe S.A.; and AXA Corporate Solutions Assurance, S.A.'s (collectively, the "Excess Insurers[']") Motion to Dismiss and Memorandum of Law on International Comity and Forum Non Conveniens (the "Excess Motion") [ECF No. 106]. The Court has considered the parties' submissions and the applicable law.

Case No. 09-61329-CIV-ALTONAGA/Brown

## I. BACKGROUND

Plaintiffs, Rolls-Royce plc, Rolls-Royce AB, Rolls-Royce Commercial Marine, Inc., and Rolls-Royce North American Holdings, Inc. (collectively, "Rolls-Royce"),[1] request this Court declare that Defendants are obligated to provide coverage and indemnify Rolls-Royce against liability arising from operational problems with bearing assemblies in Rolls-Royce's Mermaid POD ship propulsion systems. (*See* Am. Compl. ¶ 2 [ECF No. 64]). Mermaid PODs attach to the bottom of a ship and contain an electric motor that turns a propeller to drive and maneuver the ship. (*See id.* ¶ 3). The problems with the bearing assemblies in the Mermaid PODs have led to four lawsuits against Rolls-Royce. (*See id.* ¶ 4). Three of these lawsuits were filed in Florida by cruise lines operating ships equipped with Mermaid PODs, and the fourth was filed in France by the company that built those cruise ships. (*See id.*). In addition to litigation and settlement costs related to these lawsuits, Rolls-Royce has also spent a significant amount of money repairing and rectifying the bearing problems. (*See id.*). Rolls-Royce contends it is entitled to coverage and indemnification of these costs under a general ledger policy (the "Ledger Policy") issued by the Primary Insurers and three excess insurance policies (the "Excess Policies") issued by the Excess Insurers. (*See id.* ¶¶ 64, 71, 77, 83).

On April 8, 2009 Rolls-Royce filed this lawsuit in Florida state court. (*See* Notice of Removal [ECF No. 1]). The Primary and Excess Insurers filed notice of suit on June 18, 2010 in the United Kingdom (the "English Proceedings"), and service was completed in the English Proceedings before it was completed in this litigation. (*See* Mot. 4). This case was removed to federal court on

---

[1] The Rolls-Royce Plaintiffs refer to themselves collectively as "Rolls-Royce" except where their argument requires them to refer to one of the Plaintiffs individually. The Court also follows this practice.

Case No. 09-61329-CIV-ALTONAGA/Brown

August 27, 2009 and then stayed until March 31, 2010 on the parties' joint motion. (*See* [ECF Nos. 1, 4, 8, 14, 16]).

On April 21, 2010, the two sets of Defendants filed motions to dismiss for lack of personal jurisdiction, forum non conveniens, international abstention, and failure to state a claim. (*See* [ECF Nos. 36, 41]). At a status conference held shortly thereafter, the Court limited discovery to the jurisdiction and forum non conveniens questions and gave the parties until October 15, 2010 to complete that limited discovery. (*See* [ECF No. 58]). The Court also ordered the Plaintiffs to file an amended complaint to properly name all of the Defendants and denied the motions to dismiss as moot. (*See* [ECF No. 57]).

Around the same time, Rolls-Royce sought a stay of the English Proceedings by asserting that Florida was the more convenient forum in which to litigate the interpretation of the Ledger Policy. (*See* Primary Mot. 5; Opp'n 7). In a thorough and well-reasoned opinion, the English court rejected Rolls-Royce's forum non conveniens argument and concluded that England provided the most convenient forum. *See Royal & Sun Alliance Ins. plc v. Rolls-Royce plc*, [2010] EWHC (Comm) 1869, [42] (Eng.) [hereinafter Approved Judgment]. This Court took judicial notice of that opinion and ordered the parties to further limit discovery to only forum non conveniens and international abstention. (*See* [ECF No. 90]). Rolls-Royce failed to take any additional discovery, and after it was clear Plaintiffs could take no additional discovery before the deadline, the Primary and the Excess Insurers filed separate motions to dismiss. (*See* [ECF Nos. 96, 106]).

Both the Primary Insurers and Excess Insurers move to dismiss the Amended Complaint on the grounds of forum non conveniens and international abstention. Because the forum non

3

Case No. 09-61329-CIV-ALTONAGA/Brown

conveniens analysis identifies England as the most convenient forum, the Court does not reach the international abstention argument.

## II.  LEGAL STANDARD

"The doctrine of forum non conveniens permits a court with venue to decline to exercise its jurisdiction when the parties' and court's own convenience, as well as the relevant public and private interests, indicate that the action should be tried in a different forum." *Pierre-Louis v. Newvac Corp.*, 584 F.3d 1052, 1056 (11th Cir. 2009).  To obtain dismissal on the grounds of forum non conveniens Defendants must show:

> (i) that an adequate alternative forum is available, (ii) that relevant public and private interests weigh in favor of dismissal, and (iii) that the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice.  Pertinent private interests of the litigants include relative ease of access to evidence in the competing fora, availability of witnesses and compulsory process over them, the cost of obtaining evidence, and the enforceability of a judgment.  Relevant public interests include the familiarity of the court(s) with the governing law, the interest of any foreign nation in having the dispute litigated in its own courts, and the value of having local controversies litigated locally.

*Id.* (quoting *Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1356–57 (11th Cir. 2008)).  Both private and public interests should be considered in all cases.  *See Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001).  Moreover, in evaluating the private and public interests implicated by the venue of the litigation "the district judge must consider the level of deference to accord the plaintiff's choice of forum."  Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 3828 (3d ed. 2007).

Case No. 09-61329-CIV-ALTONAGA/Brown

## III.  ANALYSIS

A.     **Availability of an Adequate Alternative Forum**

The Primary and Excess Insurers propose the UK as an available and adequate alternative forum.  (*See* Primary Mot. 20; Excess Mot. 106).  "Availability and adequacy warrant separate consideration."  *Leon*, 251 F.3d at 1311.  An alternative forum is "'available' to the plaintiff . . . 'when the defendant is "amenable to process" in the other jurisdiction.'"  *Id*. (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981)).  The alternative forum is adequate unless "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all."  *Id.* at 254.

First, Rolls-Royce disputes the UK is an available forum.  While it acknowledges "a suitable alternative forum exists where the defendant is amenable to process in the other jurisdiction" (Opp'n 11), Rolls-Royce contends, "[t]he insurers cannot establish that England is an [available] forum because not all of the *insureds* [as defendants in the UK action] are subject to the jurisdiction of the UK court" (Opp'n 3) (emphasis added).  This argument is misguided.  While it is true a forum is only available if the defendants are subject to process in the alternative forum, the forum non conveniens test generally assumes the plaintiff who brought suit in the challenged venue will be the plaintiff in the proposed alternative forum.  *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 506–07 (1947) ("In all cases in which the doctrine of forum non conveniens comes into play, it presupposes at least two forums in which the defendant is amenable to process; the doctrine furnishes criteria for choice between them.").  In this case there is already a proceeding underway in the alternative forum.  If the UK is the more convenient forum, then Rolls-Royce may participate in the proceeding underway there as counter-plaintiffs, with the insurers as counter-defendants.  Consequently, the

5

Case No. 09-61329-CIV-ALTONAGA/Brown

question is not whether there is jurisdiction over all the Rolls-Royce *insureds* as defendants in the UK action, but whether the UK court would have jurisdiction over the *insurers* as counter-defendants to Rolls-Royce's counterclaims. The answer to that question is, of course, yes, because the insurers have already consented to the jurisdiction of the UK court by suing there.[2] Therefore, the UK forum is available to Plaintiffs.

Second, Rolls-Royce maintains the UK is not an adequate forum "because the UK litigation does not resolve other Rolls-Royce entities' claims." (Opp'n 12). The gist of this argument is that because European Union rules apparently prevent the insurers from suing all of the insureds in the UK,[3] the UK court cannot resolve the claims made by some of the Rolls-Royce entities, namely Rolls-Royce Commercial Marine and Rolls-Royce North American Holdings,[4] which are domiciled outside the UK. Plaintiffs add that if they join the litigation in the UK, "[t]hey will be . . . forced to waive any jurisdictional challenge." (Opp'n 4).

This argument is similar to Rolls-Royce's lack of jurisdiction argument that was just addressed, and it similarly misapprehends the function and effect of a motion to dismiss for forum non conveniens. Typically, when a motion to dismiss for forum non conveniens is filed, there is not yet any ongoing proceeding in the proposed alternative forum. Instead, upon dismissal, plaintiffs are expected to file suit in the alternative forum. If this were a typical case and the motion to dismiss

---

[2] Notably, Rolls-Royce plc and Rolls-Royce AB have already filed a counterclaim in the English proceeding. (*See* Reply Ex. A "Defence and Counterclaim" [ECF No. 112-2]).

[3] Rolls-Royce states "the insurers can only file suit against an insured domiciled in a European 'member state' if the court is found in the insured's domicile." (Opp'n 12).

[4] Rolls-Royce AB is also domiciled outside of the UK, however, it filed a counterclaim in the UK action to avoid the expiration of a statute of limitations applicable to an earlier French litigation. (*See* Opp'n 3–4).

Case No. 09-61329-CIV-ALTONAGA/Brown

were granted, all four Plaintiffs, as the insureds, would file an action in the UK against the insurers. In doing so, they would be submitting to the personal jurisdiction of the UK court.

However, in this case there is already an action proceeding in the UK, so Plaintiffs need only join or continue to participate in it and file their claims as counterclaims in that litigation.[5] Rolls-Royce waives no jurisdictional challenge by joining the English proceeding that it would not also waive by filing an original suit in the UK as it would have to do in a more typical forum non conveniens case. Plaintiffs do not otherwise challenge the adequacy of the English forum.[6] Because the UK court can provide remedies to all of the Plaintiffs if they join the UK action,[7] it is an adequate alternative forum.

---

[5] Plaintiffs concede "there are largely identical causes of action in English law." (Opp'n 12).

[6] As Judge Posner wrote in *Society of Lloyds v. Ashenden*:

> Any suggestion that this system of courts "does not provide impartial tribunals or procedures compatible with the requirements of due process of law" borders on the risible. "[T]he courts of England are fair and neutral forums." *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 958 (10th Cir. 1992) . . . . The English judicial "system . . . is the very fount from which our system developed; a system which has procedures and goals which closely parallel our own." *In re Hashim*, 213 F.3d 1169, 1172 (9th Cir. 2000).

233 F.3d 473, 476 (7th Cir. 2000) (some internal citations omitted).

[7] Even if Rolls-Royce Commercial Marine and Rolls-Royce North American Holdings could not join the English proceeding due to some procedural bar, the participation of Rolls-Royce plc, as the named beneficiary that would receive any benefits paid out under the policy, and Rolls-Royce AB, as the designer and manufacturer of the Mermaid PODs, will assure Rolls-Royce Commercial Marine and Rolls-Royce North American Holding's rights are adequately protected. Put another way, neither Rolls-Royce Commercial Marine nor Rolls-Royce North American Holdings is a necessary party to this litigation under Federal Rule of Civil Procedure 19(a).

7

Case No. 09-61329-CIV-ALTONAGA/Brown

B.   **Balance of Private and Public Interests**

Before balancing the private and public interests, there is a preliminary question of how much deference to accord Rolls-Royce's choice of forum. Rolls-Royce argues its choice of forum is entitled to substantial deference:

> [T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum . . . . When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.

*Piper Aircraft Co.*, 454 U.S. at 255–56 (footnote call number omitted). Here, none of the Rolls-Royce Plaintiffs are Florida corporations, and while two of the Plaintiffs are incorporated elsewhere in the United States, Rolls-Royce plc, which is the only named beneficiary of the policies in dispute, is a UK corporation. Consequently, Rolls-Royce's forum selection is only entitled to limited deference.

Turning to the balancing test, the Primary Insurers contend the balance of both the private and public interests suggests the UK is the more convenient forum. The Supreme Court laid out the private and public interests that must be weighed more than sixty years ago.

> An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, "vex," "harass," or "oppress" the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

> Factors of public interest also have a place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Gilbert*, 330 U.S. at 508–09 (footnote call number omitted). Additionally, in balancing the private and public interests the focus should be on the central issues in dispute. *See R. Maganlal & Co v. M.G. Chem. Co., Inc.*, 942 F.2d 164, 168 (2d Cir. 1991).

**1.   Private interests**

"Perhaps the most important 'private interest' of the litigants is access to evidence." *Ford v. Brown*, 319 F.3d 1302, 1308 (11th Cir. 2003) (considering "access to proof, availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining witnesses"). Although both parties agree "the instant matter requires nothing more than a determination of whether coverage exists under the Ledger and Excess insurance policies" (Opp'n 1; *see also* Primary Mot. 2), they disagree about what witnesses and evidence are necessary in making that determination. The Primary Insurers contend "the vast majority of witnesses who can speak to the negotiation, execution, issuance, performance, and ultimately the construction and interpretation of the Ledger Policy, are all located in the UK." (Primary Mot. 12). Similarly, the Excess Insurers maintain "all the witnesses regarding the insurance contract are located in England or [other] European countr[ies]." (Excess Mot. 9). The Primary Insurers add that evidence and witnesses

relating to the design and manufacture of the Mermaid PODs are located in France, Sweden, and the UK (*see* Primary Mot. 12), and that "all . . . documents relating to the negotiation, execution, and performance of the Ledger Policy are in the UK" (*id*. at 13).

Rolls-Royce disagrees, stating "the documentary and testimonial evidence relevant to this matter relates [sic] to the shipowners' litigation against Rolls-Royce in the Florida cases. Consideration of the underlying claims, the terms of the settlements, . . . and the reasonableness of these settlements all relate to Florida." (Opp'n 15). Rolls-Royce points out that all of the documents related to the underlying litigation have been gathered in Florida, but acknowledges that the documents have been processed electronically and can be provided in an electronic format. (*See* Opp'n 15–16). Rolls-Royce also argues that a number of witnesses it would call to testify about the underlying cases — mostly cruise line executives, counsel from the underlying Florida cases, and engineering experts — are residents of Florida, New York, or Sweden, not the UK. (*See id*. 16–18).

Because the parties dispute what evidence will be central to resolving the dispute over the interpretation of the Ledger Policy, it is difficult to determine where the bulk of documentary evidence and majority of witnesses will be located. As the English court observed, "It is by no means easy to discern which witnesses are likely to be required to give evidence, given the fact the proceedings are at such an early stage." (App'd J. ¶ 38). Nevertheless, the parties agree there will be technical testimony by expert witnesses on the design, manufacture, and repair of the Mermaid PODs. These expert witnesses are located primarily, although not exclusively, in Sweden, France, and the UK. Consequently, it would be easier and more economical to arrange or compel the

Case No. 09-61329-CIV-ALTONAGA/Brown

attendance of these witnesses at a UK, rather than a Florida proceeding.[8] The extent to which testimony about the negotiation of the policies or about the underlying Florida (and French) litigation will be necessary, relevant, and admissible is unclear at this stage and cannot be meaningfully evaluated. Therefore, insofar as the parties agree about what witnesses will be necessary —specifically, technical experts on the design, manufacture, and repair of the Mermaid PODs — the UK is the more convenient forum.

As for the other evidence Rolls-Royce deems relevant, it is for the most part documentary and has already been processed into electronic form, and it is easy to transport to the UK. Notably, while Rolls-Royce emphasizes that much relevant evidence is in Florida, it also writes, "the insurers already have in their possession the lion's share of documents . . . . [and t]hough the insurers were not actively involved in the underlying litigation, Rolls-Royce[] . . . kept the insurers apprised of the cases." (Opp'n 3). In fact, with the litigation underway and continuing in the UK, "the vast majority of documentation has already been provided to the insurers, and . . .[as] the insurers continue to ask to be provided more documents . . . Rolls-Royce will comply with those requests." (Opp'n 16). Moreover, other documentary evidence, such as communications between Rolls-Royce and the insurers regarding the policies, are located primarily in Europe. (*See* Primary Mot. 13; Excess Mot. 11). Given that some of the relevant documentary evidence is already in the UK and given that the

---

[8] The ability of this Court to compel the attendance of witnesses or to compel discovery of documents located abroad is limited and is likely to be significantly more problematic than in the UK court. This is especially true of witnesses and documents located in the European Union, where, as the Primary Insurers point out, European Union Council Regulations streamline the taking of evidence in civil matters within the European Union. (*See* Primary Mot. 15 n.16).

Case No. 09-61329-CIV-ALTONAGA/Brown

rest will be there shortly due to the ongoing litigation, the location of the documentary evidence carries little weight in this forum non conveniens analysis.[9]

A second private interest raised by the Primary Insurers is the potential enforcement of the judgments of this Court and the UK court. (*See* Primary Mot. 15). The Primary Insurers contend the resulting judgment of either court would have to be enforced in the UK as both the named insured (Rolls-Royce plc) and the majority of the primary insurers reside there. They point out that any judgment rendered by this Court could only be enforced in the UK after "fresh legal proceedings" in the UK to evaluate the finality of this Court's judgment and its competency to render such a judgment. (*Id.*). By contrast, the UK judgment would face no additional barriers to enforcement. Rolls-Royce's only response is "enforcement of a Florida judgment in the UK is no more difficult than a UK judgment is to enforce [in Florida]." (Opp'n 4). While that may be true, Rolls-Royce does not explain why the UK judgment would need to be enforced here when all of the Primary Insurers and all but one of the Excess Insurers are organized in Europe. (*See* Am. Compl. ¶¶ 21–34). The interest in the enforceability of judgments weighs heavily in Defendants' favor.

The balance of private interests tips decisively toward dismissal, but public interest factors must nevertheless be considered. *See Leon*, 251 F.3d at 1311.

---

[9] In *Piper Aircraft Co.*, the location of the evidence was important because a key piece of evidence, the wreckage of the plane, was located in a hanger in the UK. *See* 454 U.S. at 239, 242. If the case had been tried in the United States, viewing the wreckage would have been expensive or impossible. In this case, the non-testimonial evidence is largely if not exclusively documentary. Documentary evidence, especially documentary evidence that has already been digitized, can be moved easily and inexpensively unlike the wreckage of a plane.

Case No. 09-61329-CIV-ALTONAGA/Brown

### 2. Public interests

The Defendants contend the public interests implicated by this litigation favor dismissal of this case in favor of the UK proceedings. (*See* Primary Mot. 17; Excess Mot. 16–18). The Defendants highlight four public interests at stake: (1) court congestion and waste of resources, (2) the interest of a foreign nation in having the dispute litigated in its own courts, (3) the value of having controversies litigated locally, and (4) the existence of litigation pending in the alternative forum. (*See id.*).

First, Defendants contend one purpose of the doctrine of forum non conveniens is to avoid congestion and the overburdening of federal courts. (*See* Primary Mot. 17 (citing *Piper Aircraft Co.*, 454 U.S. at 252 (Without the doctrine of forum non conveniens, "American courts, which are already extremely attractive to foreign plaintiffs, would become even more attractive. The flow of litigation into the United States would increase and further congest already crowded courts."))). Defendants maintain, "[a]llowing UK companies on both sides of the case to resolve a dispute in this Court arising from an insurance contract that was negotiated, executed, issued, and paid for in the UK would directly violate this principle." (*Id.*). The Defendants add that it is a waste of judicial resources to litigate in Florida while the identical issues are being resolved in the UK proceeding. (*See id.* at 18).

Rolls-Royce does not address either of these issues directly. With respect to Defendants' court congestion argument, the Court imagines Rolls-Royce would argue that because Rolls-Royce Commerical Marine and Rolls-Royce North American Holdings are U.S. corporations, they are not the type of foreign plaintiffs contemplated by the Supreme Court in *Piper Aircraft Co*. This argument is not determinative, however, because the two Plaintiffs who really have something at

13

stake, Rolls-Royce plc as the named insured and Rolls-Royce AB as the designer and manufacturer of the Mermaid PODs, are a UK and Swedish company, respectively. As to the parallel litigation argument, the Court — unaided by Rolls-Royce's Opposition — has struggled to find a reason why it is not wasteful to continue the Florida litigation when it is likely that the UK court will reach judgment before this Court (at which point this Court would have to squarely face the abstention question in order to avoid reaching a judgment which is at best irrelevant and at worst conflicting). There is no obvious reason to reason to continue in parallel. Not only would allowing the litigation to continue here waste judicial resources but it would dilute party resources and unnecessarily expend witness time because the same issues would be litigated in both fora. Dismissal in favor of the UK forum would relieve congestion and avoid waste of judicial and party resources.

Second, Defendants contend the UK's interest in this litigation far outweighs that of the United States. (*See* Primary Mot. 18; Excess Mot. 16–17). The argument was well-summarized by the English court which concluded, "The claim is by an English insured against predominantly English insurers under an insurance policy subject to English law." (App'd J. ¶ 42). Moreover, the Ledger Policy premiums were paid in the UK in British Pounds. (*See* Primary Mot. 19). Rolls-Royce acknowledges this but contends that the dispute is more substantially connected to Florida. (*See* Opp'n 19). To support its position, Rolls-Royce reiterates its argument that most of the relevant evidence is located in Florida and asserts that all of the insurer Defendants and the Rolls-Royce Plaintiffs conduct business in Florida. (*See id*. at 18–19).

The evidence point has already been addressed; even if documentary evidence from the underlying Florida and French litigation is relevant to the central issues which arise in the English proceeding, much of that evidence has already been provided to the insurers and the rest can easily

Case No. 09-61329-CIV-ALTONAGA/Brown

be provided in electronic form. But Rolls-Royce's characterization of the parties' business connections to Florida must be considered. Rolls-Royce states:

> The insurers conduct business in Florida (even if it is through this one insurance policy . . . )[10] and provide coverage to Florida citizens and businesses; all of the Rolls-Royce entities conduct business in Florida (as the insurers were well aware); and at least one Rolls-Royce entity has an office located in Florida.

(Opp'n 19). Rolls-Royce declares without evidence or support, "Florida has an interest in litigation concerning companies, particularly insurance companies, doing business in the State and having been denied coverage under policies for which premiums were paid by other businesses operating in this State . . . ." (Opp'n 4).

In the Primary Insurers' Reply (the "Primary Reply") [ECF No. 112], which was joined by the Excess Insurers (*see* [ECF No. 113]), the Defendants contend Rolls-Royce has its facts wrong. The insurers cite to numerous affidavits to show that "most of the [primary insurers] do not conduct business in the state." (Primary Reply 7). The Primary Reply also states, "Rolls-Royce does not even correctly represent its own contacts with Florida . . . . [as] a simple public records search reveals that, with the exception of Rolls-Royce Commercial Marine, *none* of the Rolls-Royce entities [in this case] are even registered to do business in the state." (*Id*. 12 (emphasis in original)). Whichever characterization of the parties' business activities in Florida is correct, the parties' and the insurance policies' connections to England are far deeper than their connections to Florida or the United States. The UK's interest in regulating its insurance industry and providing a place for UK insureds to

---

[10] Rolls-Royce does not explain why the Ledger Policy, which was negotiated and signed in England by primarily UK companies, is an example of the primary insurers doing business in Florida. Rolls-Royce's reliance on the personal jurisdiction case, *McGee v. Int'l Life Ins.*, does not help because Rolls-Royce describes no specific contacts of the sort the Supreme Court found decisive in that case. 355 U.S. 220, 223 (1957) (finding sufficient minimum contacts because "the [insurance] contract was delivered in California, the premiums were mailed from there and the insured was a resident of that state when he died.").

Case No. 09-61329-CIV-ALTONAGA/Brown

litigate outweighs Florida's interest in settling a dispute between non-Floridian, mostly non-U.S. parties whose business contacts with Florida are, at best, tenuous.

Third, the Primary and Excess Insurers maintain that, per the terms of the Ledger Policy, English law applies to this contract dispute. (*See* Primary Mot. 19; Excess Mot. 16). Rolls-Royce acknowledges "the Ledger and Excess policies may be subject to UK law," but argues "Florida law applies to consideration of the underlying causes of action, *i.e.* Rolls-Royce's 'liability', the terms and reasonableness of the settlement agreements, and consideration of costs and expenses associated with defending the lawsuit." (Opp'n 19). As discussed above, it is very difficult at the early stage of this litigation to determine what issues will be central in this case and consequently, whether Florida or UK law will predominate. However, a pleading filed by Rolls-Royce in the English proceeding suggests English law will provide the rule of decision for most of the legal questions raised. (*See* Defence and Counterclaim). Moreover, the ultimate question — whether the insurers are liable to Rolls-Royce under the policies — is a question of English law.

While the application of foreign law should not be considered dispositive, in cases with non-U.S. plaintiffs the Eleventh Circuit has tended toward dismissal when foreign law applies. *See SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1104–05 n.10 (11th Cir. 2004). Even though some Plaintiffs in this case are domiciled in the United States, this is substantially a dispute between Rolls-Royce plc as the named insured and the predominantly European insurance companies. As such, it is a dispute between primarily foreign litigants. Even if that were not the case, the primacy of English law in resolving the legal questions in this suit, like the other private and public interests already discussed, would suggest dismissal. In this case, where

Case No. 09-61329-CIV-ALTONAGA/Brown

all of the other factors point to the UK as the most convenient forum, the interpretation of the Ledger and Excess Policies under English law is a task best left to English courts.

Fourth, although it was not identified as a public interest in the Supreme Court's decision in *Gilbert*, courts have often invoked considerations of international comity when discussing public interests in forum non conveniens cases. *See Blanco v. Banco Indus. de Venezuela, S.A.*, 997 F.2d 974, 983 (2d Cir. 1993) ("[C]onsiderations of comity weigh heavily in favor of noninterference with ongoing foreign judicial proceedings."); *see also Allstate Life Ins. Co. v. Linter Grp. Ltd.*, 994 F.2d 996, 1002 (2d Cir. 1993) ("[C]onsolidating all claims in [the foreign forum] avoids a situation where the [defendants] would have to pursue their cross-claims in [that forum] while defending against [plaintiffs'] claims in the United States. Such a scenario not only represents a waste of judicial resources, but also creates a risk of inconsistent judgments."). The ongoing litigation in the UK clears up many of the uncertainties involved with a typical forum non conveniens analysis. It makes clear there are no problems with personal jurisdiction over the insurers as counter-defendants in the UK proceeding. It also diminishes the weight litigation costs and access to evidence must be given in the balance of factors because, regardless of this Court's decision, money will be spent in the UK proceeding and all the evidence will be transported there. But ultimately, international comity is about demonstrating "a proper level of respect for the acts of our fellow sovereign nations." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1224 (11th Cir. 1999) (citing *Turner Entm't Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1518 (11th Cir. 1994)). Given the strengths of the UK's interests in this dispute (the identities of the key parties, the business interests implicated, and the predominance of English law) as well as the significant progress already made in the UK proceedings, international comity suggests dismissal is warranted.

Case No. 09-61329-CIV-ALTONAGA/Brown

## IV.  CONCLUSION

The United Kingdom is an adequate and available alternative forum for all of the parties involved in this case.  A balancing of the private and public interests at stake in this litigation shows that each interest points to the UK as the more convenient forum.  Considering all the interests together confirms that dismissal in favor of the UK forum is appropriate.  Accordingly, it is

**ORDERED AND ADJUDGED** as follows:

1. The Motions to Dismiss **[ECF Nos. 96, 106]** are **GRANTED**.

2. The Clerk shall **CLOSE** the case.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 7th day of December, 2010.

*[signature]*

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record